UNITED STATES of America, Plaintiff

v.

Hector OQUENDO–CEDENO, Defendant.

Criminal No. 07–176 (GAG).

United States District Court, D. Puerto Rico.

Jan. 23, 2008.

G. Andrew Massucco–Lataif, United States Attorney's Office, San Juan, PR, for Plaintiff.

Hector E. Guzman–Silva, Joseph C. Laws, Federal Public Defender's Office, Hato Rey, PR, Jorge L. Armenteros–Chervoni, San Juan, PR, for Defendant.

## OPINION AND ORDER

GUSTAVO A. GELPI, District Judge.

The Court hereby grants defendant's motion to suppress (Docket No. 60). This result is forcefully required, as shown by the evidence presented by the government at the December 12, 2007 hearing (*see* Docket No. 66). This evidence consisted of the following:

On March 23, 2007, Commonwealth police agents executed a state court search warrant at defendant's residence; no delictive evidence was unearthed. Outside of the home, one of the agents recognized defendant's parked tow truck. Since the vehicle was not mentioned in the warrant, the officers asked defendant for his consent to search the same. Defendant, who was not under arrest at the time, allowed the officers to look inside and signed a consent form to said effect (government's Exhibit 4). This search yielded a loaded Glock .40 magazine (government's Exhibits 6A and 6B). Because defendant admitted he was not authorized to carry the same (he was a convicted felon), he was placed under arrest and Mirandized. He proceeded to sign a form, wherein he indicated he did not wish to answer any questions to the agents (government's Exhibit 8).

Notwithstanding, the officers proceeded to inquire defendant about a wooden shack located across the street. Defendant responded that he was the owner. He was then asked for his consent to search the place, which he granted and so indicated by signing another consent form. This search yielded controlled substances, a weapon and more ammunition (government's Exhibits 11, 12, 13, 14, 15, 16, 17 and 19).

The issue before the court is straightforward. Did defendant's invocation of his Miranda right to remain silent preclude the officers from subsequently asking him about his ownership of the shack and consent to search the same?

■ Once an individual under custody is read his Miranda warnings and invokes his right to remain silent, at any time, **officers must cease the interrogation.** *Miranda v. Arizona,* 384 U.S. 436, 473–74, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Ortiz,* 177 F.3d 108, 109 (1st Cir.1999). In this case, defendant invoked Miranda, both verbally and in writing. Nevertheless, the state officers, without reason, proceeded to totally disregard· Miranda's granite-encrusted mandate. The agents' action yielded incriminating evidence, including an admission by defendant that he owned the property where the particular items were found.

■ There is no justification for the post-Miranda questioning of defendant and resulting search of his property. Upon failing to find anything other than a magazine and bullets in defendant's residence and vehicle, the agents were required to obtain a further search warrant to search the shack, given the Miranda invocation. It is evident that the sole purpose of the agents in focusing on the property was to continue looking for evidence which implicated defendant in criminal activity. More so, the question posed by the agents to defendant was not routine gathering of

information for background or booking purposes, which is excepted from Miranda. *See United States v. McLean,* 409 F.3d 492, 498 (1st Cir.2005). Here, the question about the shack was "reasonably likely to elicit an incriminating response". *United States v. Downing,* 665 F.2d 404, 407 (1st Cir.1981) (defendant's statement of ownership of airplane and fruits of search thereof suppressed where defendant had invoked Miranda and airplane was not within searched property).

The government, in its post-hearing memorandum (Docket No. 68), posits that the issue here is one of voluntariness of the defendant in consenting to the search and answering questions. When Miranda is violated, however, any voluntariness analysis becomes irrelevant. *See Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Ortiz,* 177 F.3d at 109.

Accordingly, the defendant's statement of ownership of the shack is hereby suppressed, as is all of the evidence found in the structure, which would not have been found but-for the admission (i.e., a fruit of the poisonous tree).

The Court is clearly troubled by the consequences of its ruling—the government's inability to prosecute this case. Nonetheless, it is a result of our constitutional protections, which the government must comply with and this Court must enforce.[1] Thus, the state officer's brushing aside of Miranda now leaves the federal government in an unenviable position.[2]

**SO ORDERED.**

---

[1]. The Supreme Court has recognized the continued validity of *Miranda. See Dickerson v. United States,* 530 U.S. 428, 444, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

[2]. The Court observes from the evidence presented that no exigent circumstances existed for the agents to immediately search the shack.